IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN MOORGAT and ALMA MOORTGAT<br><br>    Plaintiffs,<br><br>        v.<br><br>COUNTY OF SAN JOAQUIN, RALPH GUERRERO, ROBIN HERINGER, HOLLY METTLER-MOLEN, RENEE SMITH, CITY OF STOCKTON, RONALD EALUNARDO, and MICHAEL DIXON,<br><br>    Defendants.<br>_____/ | Case No. 09-cv-02187-JAM-EFB<br><br><u>ORDER GRANTING IN PART AND</u><br><u>DENYING IN PART COUNTY</u><br><u>DEFENDANTS' MOTION TO DISMISS</u> |

This matter comes before the Court on Defendants County of San Joaquin ("the County"), Ralph Guerrero ("Guerrero"), Renee Smith ("Smith") and Holly Mettler-Molen's ("Mettler-Molen") (collectively "County Defendants'") Motion to Dismiss (Doc. 24) the first through fifth claims for relief in Plaintiffs Stephen Moortgat ("Stephen") and Alma Moortgat's ("Alma") ("collectively Plaintiffs') First Amended Complaint ("FAC") (Doc. 22). County Defendants move for the FAC to be dismissed both for failure to

1

state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), and on grounds of qualified immunity. Plaintiffs oppose the motion.[1]

FACTUAL AND PROCEDURAL BACKGROUND

Defendants Guerrero and Smith are county social workers, and Defendant Mettler-Molen is alleged to be a social worker in training. Plaintiffs are parents of minors JM and AM. Plaintiffs' FAC alleges six claims for relief against Defendants for civil rights violations, under 42 U.S.C. § 1983. This motion seeks dismissal of the five claims against County Defendants. The other defendants in this case, County employee Robin Heringer ("Heringer"), the City of Stockton ("City"), and police officers Ronald Ealunardo ("Ealunardo") and Michael Dixon ("Dixon"), are not parties to the present Motion. The City, Ealunardo and Dixon have answered the FAC.

JM was 15 years old at the time this suit was filed. According to the allegations of the FAC, Plaintiffs allege that on May 19, 2008, a friend of JM notified a school counselor that JM's father, Stephen, had sexually abused JM. JM's school contacted the County Child Protective Services ("CPS"), and Guerrero and Mettler-Molen interviewed JM at her school. JM reported that sexual abuse had occurred on unspecified dates approximately one year prior, while the family was on vacation.

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L. R. 230(g).

2

Later Guerrero, accompanied by police officers Ealunardo and Dixon, went to Plaintiffs' home. After interviewing both Stephen and Alma, Plaintiffs allege the officers escorted Stephen from the home and ordered that he not have contact with JM or Alma. JM was taken to a safe house for one night, and was then returned to her mother Alma's care. Alma, JM and AM stayed at the home of Janet Moortgat, Stephen's mother, while Stephen stayed at a hotel, and went to the home only to use his home office. Plaintiffs allege that Guerrero required Alma to sign a "Family Safety Plan" which limited contact between Stephen and JM and AM. For a period of approximately one month, Stephen was ordered to remain separated from his family. JM later recanted her story, and no charges were ever filed against Stephen.

On June 23, 2008, Plaintiffs allege Stephen was permitted to move back into the family home with Alma, JM and AM after JM completed mandatory therapy sessions. Guerrero allegedly required Plaintiffs to enter into a "Voluntary Family Maintenance" plan ("VFM"), and warned that if they refused to sign onto or participate in the plan the County would go to court to remove the children from the home. Plaintiffs were released from the VFM and CPS supervision in January 2009, and now seek general, special, compensatory and punitive damages for Defendants' alleged civil rights violations.

I.   OPINION

A.   Legal Standard

A party may move to dismiss an action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Scheur v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Schere, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972). Assertions that are mere "legal conclusions," however, are not entitled to the assumption of truth. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a plaintiff needs to plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). Dismissal is appropriate where the plaintiff fails to state a claim supportable by a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

Upon granting a motion to dismiss, a court has discretion to allow leave to amend the complaint. See Fed. R. Civ. Pro. 15(a). "Absent prejudice, or a strong showing of any [other relevant] factor[], there exists a presumption under Rule 15(a) in favor of granting leave to amend." Eminence Capital, L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (emphasis in original). "Dismissal with prejudice and without leave to amend is not appropriate unless . . . it is clear that the complaint could not be saved by amendment." Id.

4

B. Section 1983

Plaintiffs' five claims against County Defendants are brought under 42 U.S.C. § 1983. To prevail in a §1983 civil action against state actors for the deprivation of "rights, privileges, or immunities secured by the Constitution and laws, a plaintiff must show that (1) acts by the defendants (2) under color of state law (3) deprived him of federal rights, privileges or immunities and (4) caused him damage. Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred. Accordingly, the conduct complained of must have deprived the plaintiff of some right, privilege or immunity protected by the Constitution or laws of the United States." Thornton v. City of St. Helens, 425 F.3d 1158, 1163-64 (9th Cir. 2005) (internal citations omitted).

C. Claims for Relief

    1. Violation of Fourth Amendment Rights, First Claim for Relief

Plaintiffs bring a claim under 42 U.S.C. § 1983 for violation of their Fourth Amendment rights. Plaintiffs allege that Defendants Guerrero and Mettler-Molen violated the Fourth Amendment by entering Plaintiffs' home without a warrant. However, County Defendants contend that Guerrero and Mettler-Molen entered Plaintiffs' residence in reliance on law

enforcement's prior entry, and that the FAC fails to allege that Plaintiffs refused law enforcement or CPS entry. Plaintiffs did not oppose dismissal of this claim, therefore it is dismissed against County Defendants, with prejudice.

### 2. Violation of Fourteenth Amendment Rights, Second Claim for Relief

Plaintiffs' second claim for relief under 42 U.S.C. § 1983 alleges that Guerrero and Ealunardo violated Plaintiffs' Fourteenth Amendment rights by removing JM from Plaintiffs' custody for one night, without first obtaining a warrant. The FAC alleges that these two Defendants visited the home, and JM was down the street in a police car during the visit. She was taken to a safe house for the night, and then brought by Guerrero to her grandmother's home in the morning. As an initial matter, County Defendants deny any liability for this decision, as they allege that the decision to remove was made solely by the police, and that removal was conducted solely by the police. However, the FAC alleges that the decision to remove JM was a joint decision by Ealunardo and Guerrero.

In deciding a motion to dismiss, the Court must take the allegations of the complaint as true, and draw all reasonable inferences in favor of the plaintiff. Scheur, 416 U.S. at 236, Cruz, 405 U.S. at 322. Plaintiffs have plead facts showing that both police and CPS went to Plaintiffs' home, and both were in the home interviewing Plaintiffs at the same time, prior to the decision to remove JM. The FAC alleges that Guerrero and

Ealunardo decided, prior to ending their interrogation of Alma, that the foster children residing in the home would be removed, that JM would be removed, and that Stephen would leave the home. Ealunardo then informed Alma of the joint decision. County Defendants question how Plaintiffs could know that the decision was a joint one, and argue that Plaintiffs do not give details of the decision-making conversation. County Defendants further argue that the FAC contains allegations that were not present in the original Complaint, and the new allegations should be disregarded. However, viewing the allegations in the light most favorable to Plaintiffs, the Court can reasonably infer that a joint decision was made. Furthermore, County Defendants contention that Plaintiffs are invoking a "team theory of liability" and attempting to hold Guerrero liable for police decisions merely because he was present is refuted by the allegations of the FAC, which specifically allege that Guerrero was a participant in the removal process. Accordingly, Plaintiffs have stated a claim for relief against Guerrero based on warrantless removal.

Second, County Defendants argue that even if Plaintiffs have stated a claim, Guerrero is entitled to qualified immunity for the decision to remove JM. "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is "immunity from suit

7

rather than a mere defense to liability." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (emphasis in original).

Qualified immunity analysis involves two prongs: a court must decide whether the facts the plaintiff has alleged or shown make out a violation of a constitutional right, and a court must decide whether the right at issue was clearly established at the time of the defendant's alleged misconduct. Pearson v. Callahan, 129 S. Ct. 808, 816 (2009) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). When evaluating whether an officer is protected by qualified immunity in a Section 1983 case, "the district courts and courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." See Pearson,129 S. Ct. 818. Id. To determine immunity, the court must accept the allegations in the plaintiff's complaint as true. Morley v. Walker, 175 F. 3d 756, 759 (9th Cir. 1999). "Regardless of whether the constitutional violation occurred, the officer should prevail if the right asserted by the plaintiff was not 'clearly established' or the officer could have reasonably believed that his particular conduct was lawful." Romero v. Kitsap County, 931 F.2d 624, 627 (9th Cir. 1991).

In this case, the right at issue is the right of parents and children to live together. "Parents and children have a well-elaborated constitutional right to live together without governmental interference." Wallis v. Spencer, 202 F.3d 1126, 1136 (9th Cir. 2000). "The Fourteenth Amendment guarantees that

parents will not be separated from their children without due process of law except in emergencies. Officials violate this right if they remove a child from the home absent information at the time of the seizure that establishes reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury." <u>Rogers v. County of San Joaquin</u>, 487 F.3d 1288, 1294 (9th Cir. 2007) (internal citations omitted). "Serious allegations of abuse that have been investigated and corroborated usually give rise to a reasonable inference of imminent danger sufficient to justify taking children into temporary custody if they might again be beaten or molested during the time it would take to get a warrant." <u>Id</u>. at 1294-95 (citation omitted).

    Here, County Defendants' opposition does not claim that exigent circumstance existed, necessitating a warrantless removal of JM.  Instead, they allege that Guerrero is entitled to qualified immunity because he was following California law, and thus his actions were reasonable. County Defendants cite California Penal Code Section 11165.9, which requires mandated reporters to report suspected child abuse to law enforcement or the county welfare department. California Penal Code Section 11172(a) states that a mandated reporter who reports child abuse shall not be criminally or civilly liable for making such a report. Because Guerrero, a mandated reporter, reported the suspected abuse to the police, County Defendants allege that he is immune from claims arising from his reporting. However, the FAC does not allege any claims against Guerrero for reporting

suspected child abuse. Plaintiffs' claim is that he participated personally in the warrantless removal of JM, absent exigent circumstances.

County Defendants have not argued that the right at issue was not clearly established, only that Guerrero reasonably believed his conduct was lawful. At this stage of the litigation, the FAC sufficiently pleads a claim against Guerrero to overcome qualified immunity. Thus the Court will not grant qualified immunity at this time, and County Defendants' motion to dismiss the second claim for relief is DENIED.

### 3. Violation of Fourteenth Amendment Rights, Third Claim for Relief.

Plaintiffs' third claim for relief against Defendants alleges that Defendants violated Plaintiffs' Fourteenth Amendment rights to familial association by ordering Stephen to move out of the family home. As discussed above, there is a clear right to familial association under the Fourteenth Amendment. However, County Defendants argue that the allegations of the FAC fail to state a claim against Guerrero because the allegations identify Ealunardo and Dixon, not Guerrero, as the individuals who ordered and escorted Stephen out of the home. Plaintiffs oppose dismissal of the claim, arguing that the FAC adequately alleges that the decision that Stephen must leave the home was a joint decision between Guerrero and Ealunardo. Thus, Plaintiffs contend that the FAC states a claim against Guerrero

in the third claim for relief, for the same reasons as discussed above in analyzing the second claim.

County Defendants further argue that even if Guerrero was involved in the decision to order Stephen out of the home, he is entitled to qualified immunity because he acted in accordance with California child welfare law, and thus reasonably believed his actions were lawful. Welfare and Institutions Code Section 306 provides that social workers may take minors into temporary custody without a court order if the child is in immediate danger, but social workers must first consider whether a non-offending caretaker can provide for and protect the child from abuse and whether the alleged perpetrator voluntarily agrees to withdraw from the residence, withdraws, and is likely to remain withdrawn. County Defendants maintain that they never removed JM, and instead followed California law by having Stephen voluntarily withdraw from the residence. However, County Defendants do not argue that JM or AM were in immediate danger, necessitating these actions. Taking the allegations of the FAC as true, Plaintiffs have sufficiently plead a claim against Guerrero and the Court will not grant qualified immunity at this time. Accordingly, County Defendants' motion to dismiss the third claim for relief is DENIED.

### 4. Violation of First and Fourteenth Amendment Rights, Fourth Claim for Relief

Plaintiffs allege that Guerrero violated their First and Fourteenth Amendment rights by ordering that Stephen have no contact with Alma or with the children. County Defendants raise the same arguments for dismissal on this claim as raised for the previous claim, namely that the FAC does not sufficiently allege Guerrero's involvement and that to the extent he was involved, he is entitled to qualified immunity. Again, taking the allegations of the FAC as true, as this Court must, Plaintiffs have sufficiently plead Guerrero's involvement in the decision to require Stephen to have no contact with Alma or the children. County Defendants' additional argument that Guerrero is entitled to qualified immunity due to his reliance on California Welfare and Institutions Code § 306 likewise fails for the reasons discussed above. Thus, the motion to dismiss the fourth claim for relief is DENIED.

### 5. Violation of First and Fourteenth Amendment Rights, Fifth Claim for Relief

Plaintiffs allege that Guerrero and Smith violated their rights under the First and Fourteenth Amendment, by requiring Plaintiffs to enter into the VFM plan. The plan required the family to attend therapy sessions, grant CPS access to their

12

confidential medical and therapy records, and submit to home visits by Smith. Robin Herringer (not a party to this motion) allegedly told Plaintiffs that if they did not agree to the plan, CPS would go to court to have the children removed. Plaintiffs allege that they only agreed to the plan under coercion by the CPS workers.

County Defendants contend that the VFM and provision of services under the plan is specifically authorized by California Welfare and Institutions Code Section 301(a), which provides that if a child is, or will probably soon be, within the jurisdiction of the juvenile court, the social worker may undertake a program of supervision of the child to ameliorate the situation by arranging all appropriate child welfare service. The statute further allows for the social worker to file a petition with the juvenile court if the family has refused to cooperate with the services being provided. Thus County Defendants contend that Plaintiffs were truthfully advised that if they did not agree to the plan CPS could go to court to seek removal of the children.

Verbal threats generally are not actionable in a federal civil rights proceeding. <u>Fisher ex rel. Fisher v. Placer County</u>, 2006 WL 2850375, at *6 (E. D. Cal. Oct. 5. 2006). Courts have held that "a threat constitutes an actionable constitutional violation in certain circumstances, including when the threat is

13

so brutal or wantonly cruel as to shock the conscience, or if the threat exerts coercive pressure on the plaintiff and the plaintiff suffers the deprivation of a constitutional right." Id. citing King v. Olmsted County, 117 F. 3d 1065, 1067 (8th Cir. 1997). Here, the allegations of the FAC do not show threats or coercion of such a "wanton or brutal" nature, only a threat to go to court.

Accordingly, while the FAC indicates that Plaintiffs did not want to sign the plan, the allegations are not sufficient to state a claim for violation of Plaintiffs' civil rights. Additionally, Plaintiffs' subsequent allegations that Guerrero and Smith violated Plaintiffs' rights in carrying out the components of the plan similarly fails to state a claim. Plaintiffs consented to the plan, and there are no allegations that Guerrero or Smith took any actions beyond those permitted under the plan. Plaintiffs have already amended the allegations of their complaint once, thus further amendment would be futile. Accordingly, the fifth claim for relief is dismissed, with prejudice.

C. The County's Liability

Lastly, the FAC alleges that the County is liable for the constitutional violations involving Guerrero, Mettler-Molen and Smith, based on the County's policies and practices, and on

their failure to properly train the CPS workers. County Defendants move the Court to dismiss all claims against the County, on the basis that a public entity is not liable where there is no constitutional violation, and because Plaintiffs did not name the County under the heading for each claim.

Municipal governments may only be sued under §1983 for their unconstitutional or illegal policies. Cities may not be sued for the acts of their employees. Monell v. Department of Social Services, 436 U.S. 658, 694 (1978) (holding that "a local government may not be sued under §1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under §1983"). A plaintiff may also establish Monell liability by showing that "[a] local governmental entity's failure to train its employees . . . 'amounts to deliberate indifference to the rights of persons' with whom those employees are likely to come into contact." Lee v. City of Los Angeles, 250 F.3d 668, 681 (9th Cir. 2001) (quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989)).

Because this Court has not yet determined the issue of whether constitutional violations have occurred with regard to the second, third and fourth claims for relief, the Court cannot dismiss these claims against the County. While Plaintiffs did not specifically name the County as a defendant under the

heading for each claim, the FAC contains sufficient allegations against the County that make it clear that Plaintiffs intended to hold the County liable for each claim for relief.(FAC ¶¶ 26-30). Accordingly, the motion to dismiss the claims against the County is DENIED, with the exception of the first and fifth claims for relief that have been dismissed with prejudice.

### III. ORDER

For the reasons set forth above, County Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

- The motion to dismiss the first claim for relief is GRANTED WITH PREJUDICE.
- The motion to dismiss the second, third, and fourth claims for relief is DENIED.
- The motion to dismiss the fifth claim for relief is GRANTED WITH PREJUDICE.
- Because the first and fifth claims, the only claims against Holly Mettler-Molen and Renee Smith, are dismissed with prejudice, Mettler-Molen and Smith are likewise dismissed from this action.

IT IS SO ORDERED.

Dated: September 8, 2010

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE